

# THE ATTORNEY GENERAL
# OF TEXAS

**PRICE DANIEL**
ATTORNEY GENERAL

AUSTIN 11, TEXAS

December 9, 1952

Hon. Larry O. Cox
Executive Director
Board for Texas State Hos-
   pitals & Special Schools
Austin, Texas

Opinion No. V-1535-A

Re: The legality of expending
funds appropriated for
the year ending August 31,
1952, to complete a con-
struction project which
was begun prior to that
date but upon which the
original contractor has
defaulted subsequent to
that date.

Dear Sir:

     Your request concerning the legality of expending
funds appropriated for the year ending August 31, 1952, to
complete a construction project presents the following facts.
On September 11, 1951, the Lanier Plumbing Company and the
Board for Texas State Hospitals and Special Schools entered
into a contract for the replacement of an underground steam
distribution system and installation of water heating equip-
ment at the Austin State School. Under the terms of the con-
tract the Board agreed to pay the contractor the sum of $141,-
000.00 for services to be performed by it payable out of funds
appropriated for the year ending August 31, 1952. The con-
tract provided that this sum was to be paid to the contractor
"upon monthly certificates of the Architect, and/or the Engi-
neer as follows: In the sum of (90%) per cent of the work
performed and materials in place or on the site, suitably
stored and protected; the remainder upon final completion and
acceptance of the work to which this contract refers."

     On October 1, 1952, the contractor was found to be in
default and under the terms of the contract his employment was
terminated. At that time the contractor had been paid a total
of $115,624.80, representing 90 per cent of the work performed
and materials furnished. Under the terms of the contract, the
Board is retaining the sum of $12,847.20, representing the other
10 per cent of the value of the work and materials. In addition
to this amount, there remains $12,528.00 out of the $141,000.00
originally encumbered by the contract. Claims for liens on
moneys due the contractor have been filed with the Board for the
sum of $12,608.94 in accordance with Article 5472a, V.C.S., these
claims having been filed subsequent to the date of the last in-
stallment payment which was made to the contractor. Article

5472a provides:

> "That any person, firm or corporation, or
> trust estate, furnishing any material, apparatus,
> fixtures, machinery or labor to any contractor
> for any public improvements in this State, shall
> have a lien on the moneys, or bonds, or warrants,
> due or to become due to such contractor for such
> improvements; provided, such person, firm, cor-
> poration, or stock association, shall, before any
> payment is made to such contractor, notify in
> writing the officials of the State, county, town
> or municipality whose duty it is to pay such con-
> tractor of his claim."

Based on the foregoing facts, you ask:

"Please advise whether:

> "1.     Warrants can be issued out of last year's
> appropriation, set aside to this project, to someone
> other than C. M. Lanier, to complete this project?

> "2.     Inasmuch as, under the contract, the de-
> faulting contractor is due no money on this contract,
> until completion, are we legally bound to hold the re-
> tained percentage, or may we expend all or part of
> this retained percentage, in case it is necessary to
> complete the contract?"

An appropriation for one year may legally be encumbered
by contract during the year even though the project for which it
is spent will not be completed and paid for until the succeeding
fiscal year.     Att'y  Gen. Op. V-1363 (1951).

Under the facts submitted, the sum of $141,000.000
out of the funds appropriated for the fiscal year ending August
31, 1952, were encumbered on September 11, 1951.    Since the
sum of $115,624.80 has been paid, there remains the sum of $25,-
375.20 still encumbered by the contract.

Article V of the contract under consideration provides:

> "Should the Contractor at any time refuse or neg-
> lect  to supply a sufficiency of properly skilled work-
> men or of materials of the proper quality, or fail in
> any respect to prosecute the work with promptness and
> diligence, or fail in the performance of any of the
> agreements, herein contained, such refusal, neglect or

> failure being certified by the Architect, and/or Engineer, the Owner shall be at liberty after three days written notice to the Contractor to provide any such labor or materials, and to deduct the cost thereof from any money then due or thereafter to become due to the Contractor under this contract, and if the Architect, and/or Engineer shall certify that such refusal, neglect or failure is sufficient ground for such action, the Owner shall also be at liberty to terminate the employment of the Contractor for the said work and to enter upon the premises and take possession, for the purpose of completing the work included under this contract, of all materials, tools, and appliances thereon, and to employ any other person or persons to finish the work, and to provide the materials therefor; and in case of such discontinuance of the employment of the Contractor he shall not be entitled to receive any further payment under this contract until the said work be wholly finished, at which time, if the unpaid balance of the amount to be paid under this contract shall exceed the expense incurred by the Owner in finishing the work, such excess shall be paid by the Owner to the Contractor; but if such expense shall exceed such unpaid balance, the Contractor shall pay the difference to the Owner. The expense incurred by the Owner as herein provided, either for furnishing materials or for finishing the work, and any damage incurred through such default shall be audited and certified by the Architect, and/or Engineer, whose certificate shall be conclusive upon the parties."

Since the contract authorizes the Board to employ others to finish the work in case of termination of the employment of the original contractor upon his default, warrants may be issued to anyone employed by the Board in accordance with the terms of the contract. The funds were encumbered for the purpose of performing the contract, not for the purpose of paying any one specific contractor. Therefore, in answer to your first question, it is our opinion that warrants may be issued against the remaining $25,375.20 to someone other than C. M. Lanier.

Your second question is controlled by the holding in City of Dallas v. Conley, Lott, Nichols Machinery Co., 172 S.W.2d 989 (Tex.Civ.App. 1943, error ref.). In that case the court held that the city could use whatever portion of the unexpended balance

of the original contract price, including the 10 per cent retainage, as was necessary to complete the contract, even though claims against the defaulting contractor had been filed under Article 5472a. Accordingly, you are advised that you may expend all or any part of the remaining $25,375.20, in case it is necessary to complete the contract.

Opinion V-1535, dated November 10, 1952, is hereby withdrawn, and this opinion is substituted therefor in its entirety.

SUMMARY

Money encumbered by a construction contract entered into during the last fiscal year may be expended during the present fiscal year to complete the contract, and warrants may be issued to someone other than the original contractor for the completion of the work, after termination of the employment of the original contractor upon his default.

Where installment payments of 90 per cent of the cost of labor and materials furnished had been made to the contractor, as provided for in the contract, and the contract further provided that upon default by the contractor the owner (Board for Texas State Hospitals and Special Schools) could terminate the employment and employ others to complete the work and that the contractor should not be entitled to any further payment until the work was finished, at which time he would be entitled only to the difference between the unpaid balance under the contract and the expense incurred in finishing the work, the Board could use whatever portion of the unexpended balance of the contract price, including the 10 per cent retainage on cost of labor and materials furnished, as was necessary to complete the contract, even though claims against the defaulting contractor had been filed with the Board in accordance with Article 5472a, V.C.S. City of Dallas v. Conley, Lott, Nichols Machinery Co., 172 S.W.2d 989 (Tex.Civ.App. 1943, error ref.).

APPROVED:

E. Jacobson
Executive Assistant

Price Daniel
Attorney General

MKW:CDM:mds

Yours very truly,

PRICE DANIEL
Attorney General

Mary K. Wall
Assistant

Charles D. Mathews
First Assistant